**RBC Capital Mkts., LLC v Talentnet, Inc.**

2024 NY Slip Op 31629(U)

May 8, 2024

Supreme Court, New York County

Docket Number: Index No. 652290/2022

Judge: Arlene P. Bluth

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:      **HON. ARLENE P. BLUTH**

_Justice_

PART        14

------------------------------------------------------------------------X

RBC CAPITAL MARKETS, LLC

Plaintiff,

- v -

TALENTNET, INC.,

Defendant.

------------------------------------------------------------------------X

INDEX NO.        652290/2022

MOTION DATE        05/02/2024

MOTION SEQ. NO.        005

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 005) 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 91, 92, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 118, 119, 120, 121, 122, 123, 124, 125

were read on this motion to/for                    JUDGMENT - SUMMARY                    .

Plaintiff's motion for summary judgment is granted.

**Background**

This action arises out of a contract between plaintiff and defendant in which defendant purportedly marketed itself to plaintiff as a "solutions provider for contingent labor issues." Defendant found and placed individuals to work for plaintiff. The contract contained an indemnity provision and plaintiff alleges that defendant has dragged it into a wage and hour lawsuit between defendant and a former employee of defendant. Plaintiff claims that defendant refuses to honor the indemnity provision in the contract and so plaintiff brings this case for indemnification.

Plaintiff explains that a former employee of defendant (Qayumi) commenced a lawsuit for wage and hour violations in California in July 2020. Defendant placed this employee at plaintiff as a business analyst in late 2016 and, allegedly, plaintiff fired her in April 2019. Then

**652290/2022   RBC CAPITAL MARKETS, LLC vs. TALENTNET, INC.**
**Motion No.  005**

**Page 1 of 7**

1 of 7

[* 1]

Ms. Qayumi filed a complaint alleging a host of claims, including that plaintiff and defendant jointly employed her and violated California's Labor Code through her purportedly wrongful termination. Plaintiff says it notified defendant about the lawsuit (which included both plaintiff and defendant as parties) and sought indemnification for the legal fees expended but defendant refused to pay.

Plaintiff contends that the contract unambiguously required defendant to either assume plaintiff's defense in the Qayumi trial or to indemnify plaintiff for the costs related to that lawsuit. It emphasizes that the Qayumi complaint alleged that plaintiff and defendant were joint employers of Ms. Qayumi and that directly implicates the terms of the indemnification provision in the parties' contract. Plaintiff emphasizes that there is no dispute that it entered into a contract with defendant and that defendant assigned Ms. Qayumi to work for plaintiff pursuant to that contract.

In opposition, defendant contends that plaintiff engaged in willful misconduct and that raises an issue of fact regarding the indemnification clause. Defendant contends that there is a limitation of liability clause in the parties' agreement that excludes indemnification for the other party's willful misconduct. Specifically, defendant alleges that Ms. Qayumi was instructed by an employee for plaintiff (Ms. Druyan) to submit sham time entries. Defendant claims that Ms. Druyan approved hours for Ms. Qayumi that were not plausible and reflected time that Ms. Qayumi did not work. It alleges that plaintiff had immediate control over Ms. Qayumi's hours and approving those submitted hours. Defendant argues that plaintiff and Ms. Druyan directed Ms. Qayumi to bill for time that she did not work. It theorizes that this is why plaintiff fired Ms. Qayumi—for submitting false billing records. Defendant maintains that plaintiff's failure to

**652290/2022   RBC CAPITAL MARKETS, LLC vs. TALENTNET, INC.**
**Motion No.  005**

**Page 2 of 7**

properly supervise Ms. Qayumi's time entries constituted willful misconduct and gross negligence, which bars plaintiff's claims for indemnification.

Defendant insists that it is entitled to rescission of the entire contract as plaintiff breached the material terms of the agreement. It also claims that plaintiff's motion should denied because plaintiff failed to submit a statement of material facts in support of its motion.

In reply, plaintiff observes that defendant did not dispute that plaintiff properly demanded indemnification as required under the terms of the parties' agreement. Plaintiff contends that defendant's arguments about plaintiff's possible liability with respect to false billing is irrelevant and that defendant did not cite any provision of the agreement that plaintiff allegedly breached. Plaintiff maintains that the indemnification clause clearly applies because Qayumi sued plaintiff (as well as defendant). It argues that even if two claims (for retaliation and wrongful termination) of the fourteen causes of action were not included in the scope of the indemnification provision, that would still leave twelve claims that fall under this provision's ambit.

## Discussion

The Court's analysis begins with the indemnification provision in the contract between plaintiff and defendant.

The agreement required defendant, known as the Supplier in the contract, to:

"Indemnification by Supplier. Supplier will, at its sole cost and expense, indemnify, defend and hold harmless Customer and/or its Affiliates and subsidiaries, with whom they have entered into an executed Statement(s) of Work and are Customers for purposes of that Statement of Work, and their respective officers, directors, employees, contractors, agents, representatives, successors and assigns (collectively, 'Customer Indemnitees") from and against any and all Losses suffered or incurred by any of them arising out of or in connection with a Claim of or for any of the following, whenever made:

(a) that any Deliverable(s), works, information, material(s) and/or Services furnished by or on behalf of Supplier, or the use thereof by Customer, constitutes

**652290/2022   RBC CAPITAL MARKETS, LLC vs. TALENTNET, INC.**
**Motion No.  005**

**Page 3 of 7**

[* 3]

an infringement, misappropriation or unlawful use or disclosure of any Intellectual Property Rights of a third party; or

(b) that Supplier has failed to comply with any Applicable Laws; or

(c) for death or bodily injury, or the damage, loss or destruction of real or tangible personal property of third parties (including employees of Customer and Supplier and their respective subcontractors) brought against a Customer Indemnitee and alleged to have been caused by the fault or negligence of Supplier, its officers, personnel (including Supplier Personnel), agents and/or representatives; or

(d) by or on behalf of any subcontractors or independent contractors of Supplier, or any of Supplier's personnel {including Supplier Personnel); or

(e) (a) in respect of Supplier's obligations as an employer of its personnel (including any Supplier Personnel), or (b) any claim or action alleging that a Customer Indemnitee should be deemed the 'employer" or "joint employer" of any of Supplier's personnel (including any Supplier Personnel)" (NYSCEF Doc. No. 27, § 13.02).

This section also contains the following definitions:

"Claim" means any demand, or any civil, criminal, administrative, or investigative claim, action, or proceeding (including arbitration) asserted, commenced or threatened against an entity or person. " Losses" means all judgments, awards, settlements, liabilities, damages, liens and claims, and all related costs, expenses and other charges suffered or incurred as a result of or in connection with a Claim, including reasonable attorneys' fees and disbursements, costs of investigation, litigation, settlement and judgment, and any taxes, interest. penalties and fines with respect to any of the foregoing (*id.* § 13.01).

The Court finds that plaintiff met its prima facie burden for indemnification under this provision.  There is no question that plaintiff, the "Customer", incurred losses (reasonable attorneys' fees) arising out of a litigation commenced by Ms. Qayumi (a consultant placed by defendant).  It is undisputed that Ms. Qayumi was assigned to work for plaintiff by defendant under the terms of the parties' agreement. The fact is that the indemnification language is broad—it required defendant to indemnify for any losses "arising out of or in connection with a

**652290/2022   RBC CAPITAL MARKETS, LLC vs. TALENTNET, INC.**
**Motion No.  005**

**Page 4 of 7**

4 of 7

'Claim.'" The definition of claim includes an action, such as the litigation started by Ms. Qayumi against plaintiff.

And the Court finds that defendant failed to raise an issue of fact in opposition. Much of the opposition papers focus on the fact that there is a limitation of liability clause in the agreement and that plaintiff engaged in willful misconduct such that indemnification is not required. But the mention of "willful misconduct" arises in a provision providing that:

> "IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY LOST PROFITS OR LOST REVENUE, OR FOR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR IN CONNECTION WITH THE MASTER AGREEMENT OR ANY STATEMENT OF WORK; PROVIDED, HOWEVER, THAT THE FOREGOING LIMITATION OF LIABILITY WILL NOT APPLY TO ANY OF THE FOLLOWING: (A) SUPPLIER'S INDEMNIFICATION OBLIGATIONS UNDER THE MASTER AGREEMENT OR ANY STATEMENT OF WORK; (B) A PARTY'S BREACH OF ITS CONFIDENTIALITY OR DATA PROTECTION OBLIGATIONS UNDER THE MASTER AGREEMENT OR ANY STATEMENT OF WORK; OR (C) ANY GROSS NEGLIGENCE OR WILLFUL MISCONDUCT BY A PARTY." (*id*. Article XIV [all caps in original]).

The Court fails to see how the reference to willful misconduct operates as a defense to the indemnification provision. Rather, it appears to be an *exception* to the limitation on liability; that is, willful misconduct by a party could result in that party being liable for punitive or consequential damages. But that is irrelevant to the issue here, where plaintiff seeks recovery of legal fees under the indemnification provision.

Defendant also devotes a substantial portion of the opposition to making arguments that plaintiff is negligent. It claims that Ms. Qayumi was fired because she submitted false invoices at the direction (and with the approval of) an employee for plaintiff. But, as plaintiff points out in reply, it is unclear how this raises an issue of fact regarding any alleged willful misconduct by plaintiff. It shows, as plaintiff argues, that Ms. Qayumi benefitted by getting paid for fake

**652290/2022   RBC CAPITAL MARKETS, LLC vs. TALENTNET, INC.**
**Motion No.  005**

**Page 5 of 7**

5 of 7

invoices. Plus, plaintiff pointed to deposition testimony in the Qayumi action that suggests she was fired because contingent workers are generally only retained by plaintiff for two years and the department where Ms. Qayumi worked was moved. In any event, defendant's theory is simply far too attenuated: it claims that plaintiff told Ms. Qayumi to falsify her work hours so that years later plaintiff could use that misconduct to fire her. Defendant did not submit adequate support for such a theory.

And defendant did not oppose the amount of fees sought by plaintiff. That is, defendant did not contend in its opposition that the fees incurred were not reasonable.

The Court observes that defendant's claim that plaintiff's moving papers were procedurally defective as they lacked a statement of material facts is wholly without merit. That trial court rule was amended years ago and now provides that a court "may direct" the submission of such a statement (*see* 22 NYCRR 202.8-g). It is not required nor is it a basis to deny the instant motion.

Accordingly, it is hereby

ORDERED that plaintiff's motion for summary judgment is granted and the Clerk is directed to enter judgment in favor of plaintiff and against defendant for reasonable attorneys' fees in the Qayumi Action in the amount of $955,346.04 plus statutory interest from the date of this decision along with costs and disbursements upon presentation of proper papers therefor; and it is further

DECLARED that defendant is obligated to provide indemnification against any and all judgments, awards, settlements, liabilities, liens and claims, and all related costs, expenses, and other charges, including but not limited to reasonable attorneys' fees, incurred by plaintiff in connection with the Qayumi Action; and defendant is obligated to reimburse plaintiff the

**652290/2022   RBC CAPITAL MARKETS, LLC vs. TALENTNET, INC.**
**Motion No.  005**

**Page 6 of 7**

6 of 7

reasonable and verifiable costs and expenses, including fees and disbursements of counsel, incurred by plaintiff in defending the claims and allegations in the Qayumi Action; and it is further

ORDERED that the issue of reasonable legal fees in this case is severed and plaintiff shall make a separate motion for such fees on or before May 30, 2024.

| 5/8/2024 | | |
|---|---|---|
| **DATE** | | **ARLENE P. BLUTH, J.S.C.** |

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**652290/2022   RBC CAPITAL MARKETS, LLC vs. TALENTNET, INC.**
**Motion No.  005**

**Page 7 of 7**

7 of 7